**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL D. TILLMAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-4101** |
| | : | |
| **SEAN MARLER,** *et al.* | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Goldberg, J.**                                                                 **August 28, 2020**

*Pro se* Plaintiff Michael D. Tillman, a federal inmate currently housed at FDC-Philadelphia, has filed a <u>Bivens</u> complaint naming as Defendants Warden Sean Marler, Medical Director Kevin Cassano, Medical Doctor Raeph Laughingwell, and Medical Records employee Elizabeth Shernecke.  <u>See</u> <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  All Defendants are sued in their official and individual capacities, except for Shernecke who is sued only in her official capacity.  Tillman has also moved to proceed *in forma pauperis*.  For the following reasons, the motion to proceed *in forma pauperis* will be granted and the Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) in part with prejudice and in part without prejudice.

**I.      FACTUAL ALLEGATIONS**

Tillman's allegations are brief and straightforward.  He asserts that, on August 29, 2019, he fractured two bones in his right hand during an altercation with another inmate while he was housed at USP Atlanta.  (ECF No. 3 at 5, 12.)[1]  The hand was x-rayed and placed in a splint, and an unnamed doctor directed that he return in five days.  (<u>Id.</u> at 3.)  Tillman alleges that he never

_____

[1] I adopt the pagination supplied by the CM/ECF docketing system.

received the five-day follow-up visit because he was shortly thereafter transported to FCI Petersburgh where he remained for seven days, and then transported to FDC-Philadelphia. (Id. at 12.) When he arrived at FDC-Philadelphia on September 12, 2019, he asked for medical attention for his hand, and his hand was again x-rayed on October 3, 2019. (Id.)   Twenty days later on October 23, he filed a grievance because he had not received treatment for his condition and his hand was grossly swollen and healing incorrectly. (Id.)

On October 24, 2019, Tillman was taken to Rothman Orthopedic where his hand was again x-rayed. (Id.)  At some point thereafter, he requested to see his x-ray results from the Rothman visit but was told by Defendant Shernecke that the results had not come in. (Id.) When he asked her again two weeks later, Shernecke alleged said to him "Tillman I don't know what is going on, I've never seen anything like this before.  They (Rothman) are saying that you never came to there [sic] Orthopedic center, your visit/appointment was canceled." (Id.)

On January 23, 2020, Tillman talked to his Unit Manager about his ongoing issues with the Medical Unit, and he started another grievance process. (Id.) He requested immediate medical attention because he was still suffering pain and expressed fear that his hand was not healing property and he would be left with only partial use. (Id. at 12-13.) He directed his grievance to Defendant Marler. (Id. at 13.)   Sometime in February, Marler responded that Tillman's "previously scheduled (10-24-2019) med trip was canceled do [sic] to reasons not related to [his] case." (Id. at 13.) Tillman alleges that this response constituted deliberate indifference and was duplicitous since, Tillman asserts, he was accompanied to the appointment by prison officials and Marler failed to investigate before responding to the grievance. (Id.) He appealed Marler's response to the Bureau of Prison's Northeast Region, claiming "it was clear that I have been deceived by FDC-Philadelphia's Medical Department and administrators Ms. Shernecke, Mr.

Cassano, Dr. Laughingwell and Warden Sean Marler all of whom failed to investigate my case causing me permanent damage and continued suffering." (Id.)

Tillman further alleges that he asked for and received copies of his October 24, 2019 x-ray results from an unnamed female doctor's assistant. (Id.) He asserts these copies demonstrate that the FDC-Philadelphia official did not investigate his case since the x-ray results were given by a corrections officer to non-Defendant Nurse Ms. Harris at FDC-Philadelphia, who gave them to Defendant Laughingwell. (Id.) Dr. Laughingwell later told Tillman that he looked at the x-ray, but it was too dark. (Id. at 14.) When Tillman asked to look at them, Laughingwell said he did not know where they were and had no idea what happened to them. (Id.) Laughingwell allegedly told Tillman to get a lawyer. (Id.) Tillman filed another grievance on April 20, 2020 complaining that his medical records had suffered spoliation and he was being purposely misled by FDC-Philadelphia officials. (Id.)

Tillman asserts he has never received adequate medical attention for his hand, has suffered permanent damage and loss of use of his dominant hand, and has been caused pain and suffering. (Id.) He seeks money damages. (Id. at 5.)

## II.     STANDARD OF REVIEW

Because Tillman is unable to pay the filing fee in this matter, I grant leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires that I to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999),

---

[2] Because Tillman is a prisoner, under the terms of the Prison Litigation Reform Act he is still required to pay the filing fee in full in installments.

which requires me to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. Id. As Tillman is proceeding *pro se*, I construe his allegations liberally. Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A.   Official Capacity Claims

Tillman seeks to bring official capacity claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics. See Bivens, 403 U.S. at 392 (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001) (stating that the "purpose of Bivens is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability). Bivens provides a remedy for certain constitutional violations committed by federal actors. See, e.g., Ynfante v. United States, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("In contrast to [Federal Tort Claims Act] actions, a Bivens claim can only be asserted against individual officials."). However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (per curiam); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, Tillman's claims against the Defendants in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds. See Brooks v. Bledsoe, 682 F. App'x 164, 169 (3d Cir. 2017) (per curiam) ("To the extent that Brooks is suing the BOP employees in their official

4

capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver."); Bell v. Rossott, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

**B.    Individual Capacity Claims for Deliberate Indifference**

Tillman has sued Warden Marler, Medical Director Cassano, and Doctor Laughingwell in their individual capacities asserting claims of deliberate indifference to his serious medical needs. After Bivens, the Supreme Court recognized an implied cause of action where prison officials are deliberately indifferent to a prisoner's serious medical needs. See Carlson v. Green, 446 U.S. 14 (1980). Here, Tillman invokes Bivens based on allegations that he has not received follow-up care for his broken hand after he was transferred to FDC-Philadelphia, which he asserts has led to adverse consequences including pain.

To state a constitutional claim based on a delay or denial of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Accordingly, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is

serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  Finally, a Bivens cause of action based on a theory of deliberate indifference to a prisoner's proper medical care cannot generally lie against persons who had no direct involvement in that medical treatment.  Accord Balter v. United States, 172 F. App'x 401, 403 (3d Cir. 2006).  Rather, a plaintiff must allege plausibly that each official he has named violated his constitutional rights "through the official's own individual actions."  Iqbal, 556 U.S. at 676.

Tillman's deliberate indifference allegations with regard to Warden Marler and Medical Director Cassano are not plausible.  There is no allegation that either Defendant personally refused, delayed or prevented Tillman from receiving medical care for his hand.  Marler's sole involvement with Tillman was to respond to his grievance, allegedly without investigating the facts.  Tillman's claim against Cassano is also limited to the sole allegation that Cassano failed to investigate his grievance.  Accordingly, the claims against Marler and Cassano are not plausible and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  See Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); Jackson v. Grondolsky, Civ. A. No. 09-5617, 2011 WL 13704 at *1 n.1 (D.N.J. Jan. 3, 2011)

(surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action against a prison warden would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances); Garvey v. Martinez, Civ. A. No. 08-2217, 2010 WL 569852 at *7 (M.D. Pa. Feb. 11, 2010) (rejecting prisoner's Bivens deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care and became aware of plaintiff's situation solely through the administrative grievance process) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)); Whetstone v. Ellers, Civ. A. No. 08-2306, 2009 WL 3055354 at *8 (M.D. Pa. Sept. 24, 2009) ("In the Third Circuit, merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim.").

Dr. Laughingwell is alleged to have been deliberately indifferent to Tillman's medical needs when he told Tillman that his x-ray was too dark to read and told Tillman he no idea what happened to the x-ray when Tillman asked to look at it himself. Tillman appears to assert that Dr. Laughingwell is responsible for the missing x-ray and misled him. These allegations also do not provide a plausible basis for a deliberate indifference claim since Tillman does not assert that Dr. Laughingwell refused, delayed or prevented Tillman from receiving medical care for his hand. However, as Tillman alleges that Dr. Laughingwell was his treating medical provider, I cannot say at this time that Tillman can never assert a plausible claim based on the treatment he received for his hand injury by Dr. Laughingwell. Accordingly, the individual capacity claim against Laughingwell will be dismissed without prejudice and with leave granted to Tillman to file an amended complaint if he can allege a plausible deliberate indifference claim.

C.      **Claims Based on Grievance Process**

Tillman also appears to assert claims against Marler and Cassano based upon their roles in the prison grievance process.  These claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Constitutional claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); see also Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by Tillman about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

IV.      **CONCLUSION**

For the reasons stated, Tillman's Complaint is dismissed.  Because any amendment of the official capacity claims, grievance claims and deliberate indifference claims against non-medical providers would be futile, the dismissal of those claims will be with prejudice and no leave to amend will be granted.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108, 110 (3d Cir. 2002); see also Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000).  The deliberate indifference claim against Defendant Laughingwell will be dismissed without prejudice and with leave to file an amended complaint if Tillman can cure the defects I have identified.