IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL D. TILLMAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4101 |
| | : | |
| RAEPH LAUGHINGWELL, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                   **October 29, 2021**

Plaintiff Michael Tillman, proceeding *pro se*, brings this case against Defendant Raeph Laughingwell, for deliberate indifference to his serious medical needs while Plaintiff was incarcerated the Federal Detention Center in Philadelphia. Defendant moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I will grant the Motion and dismiss Plaintiff's Amended Complaint in its entirety.

**I.     FACTS IN THE AMENDED COMPLAINT**

The Amended Complaint sets forth the following facts: [1]

Plaintiff alleges that on August 3, 2019, he fractured his right hand while housed in USP Atlanta. He was taken to the emergency room where was given a splint and prescription for pain medication, with directions to follow up with orthopedic treatment within five days, *i.e.*, by September 4, 2019. (Compl. p. 12.)

---

[1]     In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), I must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).
    Here, although the operative document here is the Amended Complaint, Plaintiff provides more factual detail about his claims in his original Complaint. For purposes of clarity, and in light of the fact that Plaintiff is proceeding *pro se*, I will, where appropriate, reference the allegations in the original Complaint.

On September 4, 2019, Plaintiff was transferred from USP Atlanta, travelled through the Federal Correctional Center in Petersburg, and ultimately arrived at the Federal Detention Center ("FDC") in Philadelphia on September 12, 2019. (Id.) Upon Plaintiff's arrival, Defendant Raeph Laughingwell became his primary care physician. After Plaintiff's repeated requests for care of his hand, he received an x-ray on October 3, 2019. While conducting this x-ray, Defendant unwrapped Plaintiff's splint allegedly causing him additional harm by depriving him of the support of his splint. Defendant then "delegated the duties" of re-wrapping Plaintiff's hand to Nurse Nelson, who is not trained in orthopedics, thus causing Plaintiff more damage and delayed treatment. (Am. Compl. ¶¶ 4–8.)

Thereafter, Defendant reviewed Plaintiff's past medical history and previous doctors' orders. Defendant was also informed of Plaintiff's ongoing issues with his hand but offered little by way of follow up care. Plaintiff was then administered additional x-rays at "Rothman" on October 24, 2019. When Defendant received those x-ray results, however, he told Plaintiff they were too dark to scan and copy for Plaintiff, thus preventing Plaintiff from learning about his own medical issue. According to the Amended Complaint, Defendant disregarded the previous doctors' orders and caused Plaintiff to go without any substantial care from September 12, 2019 until February 2020. (Am. Compl. ¶¶ 1–3, 9.)

Ultimately, Plaintiff contends that, due to Defendant's negligent actions, his orthopedic treatment was delayed, and his bones healed incorrectly. During a "Chronic Care Meeting," Plaintiff expressed his fears and pain to Defendant, who told him it was his fault for fighting. (Id. ¶¶ 10–11, 13.)

Plaintiff filed a Complaint against multiple defendants on August 19, 2020. Following a screening of the case pursuant to 28 U.S.C. § 1915, I dismissed all of Plaintiff's claims but granted

2

him leave to replead his claims against Defendant Laughingwell. Plaintiff filed an Amended Complaint on October 21, 2020, setting forth claims against Laughingwell for deliberate indifference to serious medical needs and medical malpractice.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step

is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

### III.   DISCUSSION

#### A.   Exhaustion of Administrative Remedies

Defendant first presses that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") prevents prisoners from filing suit with respect to prison conditions under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006); Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007). Exhaustion requires proper exhaustion, meaning that an inmate must "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court. Woodford, 548

U.S. at 88. In other words, inmates must avail themselves of "all steps the agency holds out" and do "so properly." Id. at 90. The exhaustion requirement is mandatory, Ross v. Blake, 136 S.Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

To determine whether a prisoner has properly exhausted a claim, a court must evaluate the "prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83–84. Such failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 230. Notably, however, exhaustion of administrative remedies is an affirmative defense, which a defendant bears the burden to plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003). "[I]t is not a pleading requirement for the prisoner-plaintiff." Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013).

The prison grievance system applicable to the present dispute is the Bureau of Prison's ("BOP"'s) published grievance procedure. Under that procedure, an inmate shall, within twenty days from the event of concern, first present an issue "informally to staff" and staff shall attempt to informally resolve it before submission of a "Request for Administrative Remedy." 28 C.F.R. §§ 542.13–542.14. If the issue is not resolved, the inmate may file, on the correct form, a formal, written Administrative Remedy Request with the institution in which he or she is housed. 28 C.F.R. § 542.14. The warden has twenty days in which to respond. 28 C.F.R. § 542.18. If the

5

inmate is not satisfied with the warden's response, he or she may submit an appeal to the appropriate regional director within twenty days of the date the warden signed the response. 28 C.F.R. § 542.15. The regional director has thirty days to respond. 28 C.F.R. § 542.18. If the inmate is not satisfied with the regional director's response, he or she may submit an appeal to the General Counsel within thirty days of the date the regional director signed the response. Id. General Counsel then has forty days to respond. Id. If, at any level, an inmate does not receive a response within the time allotted for such response, the inmate may consider the absence of a response to be a denial at that level. Id.

Here, the Amended Complaint alleges that Plaintiff raised his claims via the grievance process at FDC Philadelphia. (Am. Compl. § VII.D & E.) According to Plaintiff, his grievance stated that he "was being neglected and requested immediate medical attention. I was afraid of my bones healing incorrectly. Also I believed that my primary doctor has used spoilation, malice and duplicity to deceive me." (Am. Compl. § VII.E.2.) Plaintiff asserts that he has "appealed to the highest level [without] any help." (Id. § VII.E.4.)

Defendants contend that Plaintiff has not properly exhausted his administrative remedies. Referencing attached prison records regarding Plaintiff's administrative complaints, Defendants assert that:[2]

- On December 2, 2019, Plaintiff filed an Administrative Remedy with the Bureau of Prison's ("BOP"'s) Northeast Regional Office requesting medical treatment for a hand injury. The Regional Office rejected Plaintiff's request because a prisoner must first file a request through the institution, for the Warden's review and response, before filing an appeal the regional level.

---

[2]    Given that the exhaustion issue turns on the indisputably authentic documents related to Plaintiff's grievances, I may consider these documents without converting the motion to dismiss into a motion for summary judgment. Spruill, 372 F.3d at 223.

- On January 23, 2020, Plaintiff filed an Administrative Remedy with the Warden of FDC Philadelphia, requesting medical treatment for his right hand. The Warden responded on February 19, 2020, explaining that medical records showed the treatment for his hand was being provided by FDC Philadelphia medical staff, and that an appointment with an orthopedic surgeon would be rescheduled at the next available date.

- On March 1, 2020, Plaintiff appealed the Warden's response to the Northeast Regional Office, which denied his appeal May 8, 2020. The Regional Office noted that Plaintiff's medical records showed that Plaintiff had been evaluated by an orthopedic surgeon and nurse practitioner, and appropriate care was prescribed.

- On May 12, 2020, Plaintiff appealed to the BOP Central Office (general counsel), which rejected his appeal as untimely and because Plaintiff had provided a copy of his Regional Administrative Remedy or Institution Administrative Remedy. Under 28 C.F.R. § 542.17, when an appeal is "rejected," the inmate is given a reasonable time extension in which to correct the defect and resubmit the appeal. Plaintiff never resubmitted his appeal.

- On April 8, 2020, Plaintiff filed an administrative remedy with warden of FDC Philadelphia requesting medical records of x-rays previously taken at Rothman Orthopedics. The warden responded on April 27, 2020, noting that a request for copies of the x-ray records had been submitted. Plaintiff did not appeal.

Based on these records, Defendant posits that Plaintiff has failed to exhaust administrative remedies because (a) Plaintiff's untimely submission to BOP Central Office did not constitute a proper submission to that level, and (b) Plaintiff's failure to correct his deficiency resulted in a procedural default.

Remembering that this matter is still in the pleading stage, I cannot find that Defendant has met his burden of proving failure to exhaust. Plaintiff's complaint alleges that he submitted his dispute to all levels of the BOP's grievance system. The records before me do not explain why Plaintiff's appeal to the BOP Central Office, submitted only four days after the Regional Office's denial of his prior appeal, constituted an untimely submission. See 28 C.F.R. § 542.18 (giving an inmate thirty days to file an appeal from a denial by the Regional Office). Defendant also offers no explanation for the Regional Office's own delay in responding on May 8, 2020 to Plaintiff's

7

March 1, 2020 appeal.  See 28 C.F.R. § 542.18 (giving the Regional Office thirty days to respond to an appeal).  Indeed, this seemingly untimely response by the Regional Office would render Plaintiff's remedies exhausted.  See Small, 728 F.3d at 273 (noting that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance).

In short, I find that these issues of fact regarding Plaintiff's exhaustion of his administrative remedies are not appropriate to decide at this stage of the litigation.  Given that the Defendant bears the burden of proving exhaustion, I will deny Defendant's Motion to Dismiss on this ground.

### B. *Bivens* Claims Against Defendant Laughingwell

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the United States Supreme Court recognized an implied right of action for damages against federal officials who have violated a person's Fourth Amendment rights. 403 U.S. 388 (1971). The Supreme Court subsequently extended Bivens's reach and recognized an implied cause of action where prison officials are deliberately indifferent to a prisoner's serious medical needs.  See Carlson v. Green, 446 U.S. 14 (1980).

Under a liberal construction of the Amended Complaint, Plaintiff appears to bring Bivens claims against Defendant Laughingwell for both (1) his supervisory role over other medical staff and (2) his individual actions.  I address each claim individually.

#### 1. Supervisory Liability

The United States Supreme Court has emphasized that "[i]n a . . . Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 676.  "When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an 'affirmative part' in the

8

complained-of misconduct." Rogers v. U.S., 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (citing Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)). While a supervisor may not encourage constitutional violations, that supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) (quotations omitted).

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). "[S]uch assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation." Fennell v. Rodgers, 762 F. Supp. 2d 727, 733 (D. Del. 2011), aff'd, 436 F. App'x 53 (3d Cir. 2011). In other words, "supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were 'the moving force' behind the harm suffered by the plaintiff." Id.

Here, Plaintiff's claim against Laughingwell for any actions by the medical staff at USP Atlanta or other medical providers at FDC Philadelphia is deficient. The Amended Complaint is devoid of any allegations alleging either any express direction by Laughingwell or any type of policy put into place by Laughingwell which was the "moving force" behind any of Plaintiff's injuries. Absent such factual allegations, I will dismiss this claim.

2. Individual Liability

Plaintiff also appears to bring a deliberate indifference to serious medical needs claim based on Defendant Laughingwell's individual actions.

9

To state a constitutional claim based on a delay or denial of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

"A medical need is 'serious,' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. See Spruill, 372 F.3d at 235; see also Lopez v. Corr. Med. Servs., Inc., 499 F. App'x 142, 146 (3d Cir. 2012) ("Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner, though, do not constitute deliberate indifference to serious medical needs.").

Here, Plaintiff's claim rests entirely on his belief that he needed additional and more intense orthopedic care for his broken fingers than that prescribed by Laughingwell. Specifically, Plaintiff alleges that Laughingwell disregarded another doctor's specific orders for follow-up, made his own conclusions from Plaintiff's x-rays, negligently unwrapped Plaintiff's hand splint for an x-

10

ray, improperly delegated the rewrapping of Plaintiff's hand to a non-orthopedic nurse, failed to consult with Plaintiff about the inability to copy the "too dark" x-rays from Rothman orthopedics, and delayed treatment of Plaintiff's hand.

Assuming these allegations plausibly plead a "serious medical condition," nothing in the Amended Complaint allows a reasonable inference that Defendant acted with deliberate indifference. Plaintiff does not suggest that he was completely deprived of medical treatment. Indeed, Plaintiff concedes that he received care from Laughingwell but disagrees with the course of medical treatment that Laughingwell pursued. At best, Plaintiff's claims sound in medical malpractice. Because such allegations do not suggest—under any reasonable reading of the Amended Complaint—that Laughingwell was aware of a substantial risk of serious harm to Plaintiff and affirmatively disregarded that risk, I will dismiss this cause of action.[3]

### C. Medical Malpractice Claims

Liberally construing the claims in Plaintiff's Amended Complaint, Plaintiff also appears to set forth a state law cause of action for medical malpractice.[4] Defendant moves to dismiss that claim based on Plaintiff's failure to obtain a certificate of merit. I agree and will dismiss this cause of action.

"It is well-recognized that to pursue a medical negligence/malpractice claim in the federal courts in Pennsylvania, a plaintiff must file a [certificate of merit] pursuant to Pa. R.

---

[3] Defendant asserts that he is entitled to qualified immunity. As I find no constitutional violation, however, I need not address this defense.

[4] Defendant also discusses Plaintiff's claim as an ordinary negligence claim. Plaintiff's references to negligence, however, concern only Defendant's provision of medical care and, therefore, sound in malpractice. See Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir.2007) ("A complaint 'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment.'") (quotations omitted).

11

C.P. 1042.3(a)(1)."[5] Michtavi v. Scism, No. 12-cv-1196, 2013 WL 371643 (M.D. Pa. Jan. 30, 2013) (citing Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007)). "If a plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, the proper procedure in federal practice is to file a motion . . . to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Paige v. Holtzapple, No. 08-cv-978 2009 WL 2588849 (M.D. Pa. Aug. 19, 2009); Weaver v. Univ. of Pitt. Med. Ctr., No. 08-cv-411, 2008 WL 2942139, at *4 (W.D. Pa. July 30, 2008) (stating that the certificate of merit requirement of Rule 1042.3 applies to cases in federal court and is properly the subject of a motion to dismiss).

---

[5] Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, . . . the plaintiff if not represented shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the . . . party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a).

Here, Plaintiff alleges that Defendant Laughingwell, in treating Plaintiff's hand injury, made negligent decisions with respect to the proper course of care and negligently performed medical care, thus resulting in additional harm to Plaintiff. The viability of such medical claims is not within the knowledge of lay persons and, thus, expert opinion in the form of a certificate of merit is required. While I recognize that Plaintiff is proceeding *pro se*, Pennsylvania Rule of Civil Procedure 1042.3 "applies equally to both pro se and represented Plaintiffs." Michtavi, 2013 WL 371643, at *4 (rejecting the plaintiff's argument that "because he is a pro se incarcerated litigant, he has no access to an independent medical expert to provide a COM for him") (citations omitted). As it has been more than eight months since the Amended Complaint was filed and Plaintiff has made no attempt to file a certificate of merit, I will dismiss this claim.

## IV.  CONCLUSION

In light of the foregoing, I will dismiss Plaintiff's Amended Complaint in its entirety. Although I remain cognizant that, in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint, I need not grant leave to amend where it would be inequitable or futile to do so. Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

Here, I dismissed Plaintiff's original Complaint, including his deliberate indifference claims against Defendant Laughingwell, for failure to state a claim upon which relief may be granted. In doing so, I granted Plaintiff leave to file an Amended Complaint correcting the deficiencies identified. His Amended Complaint, however, failed to correct those deficiencies despite my explicit guidance. As I find that any future efforts to amend the complaint would be futile, I will dismiss his claims with prejudice.

An appropriate Order follows.